United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEVIN E. SHAFFER,

Plaintiff,

v.

SANTA CLARA COUNTY SHERIFF'S OFFICE, et al.,

Defendants.

Case No. 26-cv-04580-NW

**ORDER DENYING MOTION TO AMEND AS MOOT; SCREENING AND DISMISSING COMPLAINT WITH LEAVE TO AMEND**

Re: ECF No. 5

Plaintiff Devin Shaffer, a state pretrial detainee, filed a *pro se* civil rights lawsuit alleging several claims against more than forty Defendants. *See* ECF Nos. 1, 5. Shaffer also filed a motion to amend his Complaint. *See* ECF No. 5. The motion and Complaint are now before the Court for decision and screening pursuant to 28 U.S.C. § 1915A(a). For the reasons set forth below, the Court **DENIES** the motion as moot and **DISMISSES** the Complaint with leave to amend.

## I. BACKGROUND

Shaffer raises numerous claims in his Complaint.[1] He seeks monetary damages and injunctive relief. The Court summarizes each group of claims below.

### A. Conditions in AdSeg

Shaffer alleges that conditions of confinement in administrative segregation ("AdSeg") are punitive and harmful: the cells are allegedly dirty, have many cockroaches, and smell like sewage. Shaffer states that the smell of the housing units causes him to get headaches. In addition, on one occasion, fifty or more "cockroaches of all sizes . . . came crawling out of the drains" as Shaffer attempted to pour soapy water to hide the smell of sewage. When Shaffer complained to a deputy

[1] All allegations in this section are from the Complaint. *See* ECF No. 1.

named Johnson, Johnson did not believe Shaffer and ignored him. ECF No. 1 at 8.

**B. Conditions on Seventh Floor**

Shaffer alleges that his label as a "J-Cat," which he describes as a derogatory term for a mentally ill prisoner used by both guards and prisoners, has led to Shaffer being bullied, teased, and attacked while he is housed on the seventh floor of the jail. ECF No. 1 at 16. Shaffer describes two such attacks that occurred in January 2024 and October 2024. He also asserts he was attacked in November 2024 while housed on the same floor. Prior to the November 2024 attack, Shaffer had allegedly expressed concerns about his safety to Deputies Palayo and Downing. Shaffer states that the incidents were not investigated despite Shaffer's injuries, and that he continues to be moved to the seventh floor despite the known concerns for his safety. Shaffer contends he also spoke to Deputies Rojas and Cabrera, but does not specify the timing of his conversation.

Due to Shaffer's fear of further assaults, he does not leave his cell when he is housed on the seventh floor of the facility. ECF No. 1 at 18. Moreover, as many deputies refuse to "accommodate" Shaffer's decision not to leave his cell, he does not receive normal entitlements while housed in that unit. *Id.* at 19. Shaffer's refusal to leave his cell has also affected his ability to receive medical care. *Id.* at 57.

**C. Conditions on Eighth Floor**

Shaffer alleges several incidents and challenges conditions occurring on the eighth floor of the jail, which includes the Acute Psychiatric Unit and Special Management Unit. *See* ECF No. 1 at 20. Shaffer was housed there in 2024 and 2025. The units reportedly smelled strongly of urine, feces, and bacteria. On one occasion, Shaffer's cell had "at least over [fifty]" large black flies. *Id.* The area also had feces smeared on surfaces that were not cleaned.

In February 2025, while housed on the eighth floor, Shaffer was placed next to a cell that had a sink with continuously running water. After a deputy attempted to fix the leaky sink, Shaffer's sink and toilet also began to leak. ECF No. 1 at 25. Instead of moving Shaffer to a cell without plumbing issues, deputies shut off water to the cell, and Shaffer had to notify deputies each time he needed water from the faucet or to flush the toilet. Some deputies refused to help

United States District Court
Northern District of California

Shaffer upon his request that they turn on the water to his cell. Deputy Sanders reportedly ignored Shaffer's request for running water "for a substan[t]ial amount of time." *Id.* at 26. Deputy Roth allegedly ignored Shaffer's request for running water, stated that she did not know how to turn it on, and did not ask anyone else for help. She also allegedly covered Shaffer's cell window, which prevented Shaffer from watching television or seeing deputies who were outside his cell. Shaffer remained housed in the same cell without running water for four days. Shaffer additionally alleges that the named deputies were a different race than him.

Also in February 2025, Shaffer was reportedly placed into a cell with feces smeared throughout the cell. *See* ECF No. 1 at 26. Shaffer requested to be moved to another cell but was told by Deputies Cammarga and Doughbar that no other cell was available. The deputies also told him that he could clean the cell but did not give Shaffer gloves to do so. Shaffer nevertheless cleaned the cell. Later, Shaffer learned that there was a different cell available, and that Cammarga and Doughbar had lied to him.

**D. Medical Care**

Shaffer asserts that medical staff discriminated or were indifferent toward him while he was housed in AdSeg. *See* ECF No. 1 at 9. Shaffer states that he did not know why staff were indifferent toward him, but "note[s] that all of the medical staff was of a different ethnicity than [Shaffer]." ECF No. 1 at 9. For example, Shaffer discusses a September 2024 incident during which a nurse, Marilen Bagunas, refused to take the temperature of Shaffer's ear upon his request while he had an earache, and another occasion when Bagunas attempted to look inside Shaffer's ear without using a sanitary disposable cup on the instrument. Bagunas allegedly left after Shaffer complained and wrote in her notes that Shaffer was acting hostile. When Shaffer again requested medical care related to his ear, two other nurses allegedly looked inside Shaffer's ear and told him that it looked normal and had no ear wax, which Shaffer disputes. Shaffer was prescribed ear drops, but he did not receive them for several days. Shaffer also missed his medication on a date when the individual handing out morning pills failed to wake him up for "pill call." *Id.* at 10. On another occasion, a dentist refused to prescribe an antibiotic or strong pain medication for a cavity, which "greatly hurt [him] psychologically" and made him feel discriminated against because he

saw another prisoner receive a "strong" opioid pain medication for tooth pain. *Id.* at 13.

Shaffer also alleges that he requested to be tested for developmental disabilities and ADHD but was told that he could not be tested. After Shaffer filed several grievances, Dr. Bloch, who went to Shaffer's cell to test him, allegedly asked Shaffer why he wanted to get tested. Dr. Bloch then told Shaffer he could not be tested from his cell due to confidentiality concerns. Shaffer attempted to waive any confidentiality concerns, but his request was refused by Dr. Bloch. *See* ECF No. 1 at 29–30. Shortly after this exchange, Shaffer was moved from the Special Management Unit on the eighth floor of the jail. Shaffer believes that Dr. Bloch refused to test him to ensure Shaffer's removal from the unit.

Shaffer discusses various other health concerns (cysts, hair loss, nose bleeds, and a lump on the back right side of his head), medical disagreements, and complaints related to medical care he received throughout multiple bouts of incarceration between 2009 and 2025. Shaffer also challenges medical care related to his ear, jaw, and head; alleged infections not diagnosed or treated; alleged CT Scan findings not discussed with Shaffer or treated by doctors; Dr. Natalia Pavinska and Dr. Laura Peterson's conclusions that Shaffer's CT Scans had no abnormal findings; and Dr. Peterson's denial of his request for an MRI in July 2025. *See* ECF No. 1 at 34–40. Shaffer also names numerous other medical professionals who ordered or performed CT Scans of Shaffer's head between April 2020 and June 2025. Various doctors and psychiatrists Shaffer spoke to about his CT Scans were reportedly condescending, disrespectful, or unprofessional, and denied any abnormalities in his CT scans.

Shaffer similarly asserts that various doctors, including Dr. Pavinska, Dr. Peterson, Dr. Yvonne Muro, and Dr. Susana Frasier, failed to adequately treat or diagnose a medical condition that caused Shaffer to break out in itchy rashes. *See* ECF No. 1 at 53. In April 2025, Shaffer allegedly broke out in a rash; because the issue was recurring, unspecified doctors instructed Shaffer to let them know if the rash returned as soon as possible so they could take a sample of the rash. After Shaffer notified Deputy Lazcano, however, he delayed notifying the medical team for approximately fifteen minutes. Nurse Nia, who came to the cell to take a swab of the rash, did not bring the correct tools, and it took her "over 30 minutes" to bring culturing

equipment to Shaffer's cell. *Id.* at 55. Later, testing of the sample revealed that the rash was caused by a staph infection.

In addition, Shaffer disputes doctors' conclusions that he needs antipsychotic medications, and alleges that these medications caused several concerning side effects. *See* ECF No. 1 at 45. Dr. Samina Khan allegedly failed to warn Shaffer about metabolic side-effects or "order a baseline vitals, [metabolic], lipid panel test to record [Shaffer's] reactions to the medication." *Id*. at 47. Shaffer later saw two other doctors, Dr. Chris Chen and Dr. Karsten Heil, who ordered blood tests. Shaffer alleges that his cholesterol, lipoproteins, and other readings "show[ed] signs of . . . injury to [his] liver." *Id.* at 48. Shaffer alleges that prior labs were normal, and the antipsychotics were the only significant change to his routine.

**E. Alleged False Report**

Shaffer alleges that Deputies Centeno and Acosta and Dr. Chen deliberately falsified a report that Shaffer threw feces at them to justify their failure to take Shaffer to a doctor's appointment for a potentially broken finger. *See* ECF No. 1 at 44. Shaffer alleges that the record of the incident has "had vast negative effects on [his] criminal proceedings and has led forensic psychologists to question [Shaffer's competency]." *Id.*

**F. Food Trays & Commissary**

Shaffer alleges that he regularly receives open, adulterated, unpleasant, and smelly food trays. *See* ECF No. 1 at 14. Deputies regularly refused Shaffer's requests for a new tray, and they became frustrated and aggressive when Shaffer refused food trays. In September 2024, Johnson served Shaffer an opened dinner tray that made Shaffer feel sick after he ate it. Johnson allegedly said, "you ate that?" after Shaffer told him that the food made him feel sick. *Id*. Shaffer made himself vomit, which left a "slimey concerning body fluid taste in [his] mouth." *Id*. A nurse named Anna then ignored Shaffer's request to be tested as if the incident had been a sexual assault.

Shaffer also discusses instances during which he allegedly purchased food, coffee, or personal hygiene items but they arrived with "air holes" or smelled like urine. *See* ECF No. 1 at 32.

**G. Legal Mail**

In May 2025, Shaffer mailed legal documents to an unspecified location, but the letter was marked "return to sender" by the post office. ECF No. 1 at 34. When Shaffer received his mail from jail staff, the letter had been opened outside his presence. Shaffer states that the mail was "more than likely about the conditions of [his] confinement." *Id.* Twice during July 2025, Shaffer attempted to mail and file unspecified documents with the state superior court, but the filings were never received by the superior court. Shaffer suspects that Deputies Tirado and Juarez, who took his legal mail after he had prepared it, discarded the mail.

**H. Other Allegations**

Shaffer makes various other allegations throughout his Complaint. For example, Shaffer alleges that the jail's distribution of inmate tablets was discriminatory because some deputies allowed inmate trustees to distribute tablets, and Shaffer would often not receive a tablet, have his tablet stolen, or receive broken tablets. *See* ECF No. 1 at 22. When Shaffer complained, deputies also did not follow through with commitments to give Shaffer a tablet for weeks at a time.

Shaffer also complains about cleaners who on more than one occasion were allegedly loud and got water into Shaffer's cell as they cleaned outside the cell overnight. *See* ECF No. 1 at 51-52. Shaffer states that he was targeted "as [Shaffer is] Caucasian and [the cleaners] were not." *Id.* at 52. One cleaner allegedly pushed water two feet into Shaffer's cell, which wet some of Shaffer's personal items.

Shaffer asserts that "Santa Clara County Sheriff's Office as a whole, and Captain G. Gill are ultimately responsible for [all alleged] violations of minimum standards." ECF No. 1 at 60.

**II. LEGAL STANDARD**

Federal courts engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer, or an employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b)(1), (2). *Pro*

*se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The United States Supreme Court has explained the "plausible on its face" standard of *Twombly*: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't of Corr. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Actions in this context include when a defendant engages in the affirmative act, participates in another's affirmative act, or fails to perform a legally required act. *Leer*, 844 F.2d at 633.

## III. DISCUSSION

The Court considers each group of Shaffer's claims below.

### A. Failure to Protect

Shaffer alleges that deputies are failing to protect him when he is housed on the seventh floor of the jail. A pretrial detainee is protected from punishment without due process under the

Due Process Clause of the Fourteenth Amendment. *See United States v. Salerno*, 481 U.S. 739, 746–47 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979). Under the Fourteenth Amendment, a detainee bringing a failure-to-protect claim must show that the named jail official acted with deliberate indifference. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc).

But whereas a convicted prisoner must prove an individual defendant's subjective awareness of a risk of harm to prevail on a failure-to-protect claim under the Eighth Amendment, a pretrial detainee need not do the same to prevail on a failure-to-protect claim under the Fourteenth Amendment. *See Castro*, 833 F.3d at 1068–70 (holding that objective standard of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), applicable to excessive force claims brought by pretrial detainees, also applies to failure-to-protect claims brought by pretrial detainees). A pretrial detainee need not "prove an individual defendant's subjective intent to punish in the context of a . . . failure-to-protect claim." *Id.* at 1070. A pretrial detainee who asserts a due process claim for failure to protect instead must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 1071.

To show deliberate indifference, a detainee must show that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the defendant's conduct must be objectively unreasonable— "a test that will necessarily turn[] on the facts and circumstances of each particular care." *Id.* (citation modified).

Here, Shaffer may be able to state a cognizable claim of failure to protect based on his allegation that his label as a "J-Cat," which is used by deputies and prisoners, places him in danger while he is housed on the seventh floor. *See Hearns v. Terhune*, 413 F.3d 1036, 1040–42 (9th Cir. 2005). Shaffer must, however, identify a proper Defendant or Defendants for this claim; further,

Shaffer must include specific information about the nature of the January 2024, October 2024 attacks and specify when he notified Deputies Rojas and Cabrera about his safety concerns. Similarly, he must specify who failed to investigate the attacks. Because Shaffer alleges that he notified the housing classification officers Palayo and Downing in October 2024 about his seventh floor housing safety concerns, and Shaffer was attacked shortly after in November 2024, Shaffer states a cognizable claim of failure to protect against Palayo and Downing.[2]

**B. Deliberate Indifference**

Shaffer alleges that various jail and medical staff were deliberately indifferent to his safety and wellbeing. Deliberate indifference to a pretrial detainee's health or safety needs violates the Fourteenth Amendment's Due Process Clause. *See, e.g., Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). The same standard that applies to a failure-to-protect claim applies to a claim of deliberate indifference to a detainee's medical needs. *See Gordon*, 888 F.3d at 1122 & n.4.

**1. Conditions of Confinement**

**a. AdSeg**

Shaffer may be able to state a claim of deliberate indifference against Johnson based on the incident during which Shaffer allegedly notified Johnson regarding the dozens of cockroaches that crawled out of the drain. "Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018). Liberally construed, Shaffer's allegation that Johnson failed to act after being notified of the incident shows that Johnson failed to take reasonable measures to abate the unsanitary conditions; however, it is unclear whether Shaffer suffered any injuries as a result. *See Monji v. Cnty. of Kern*, No. 19-cv-01526-JLT, 2025 WL 690401, at *25 (E.D. Cal. Mar. 4, 2025) (analyzing claim that defendants were deliberately indifferent to unsanitary and unhealthy

[2] Shaffer may also be able to state a claim for deliberate indifference regarding his allegation that deputies failed to accommodate him due to his fear of being attacked if he leaves his cell. But he must provide more information about the specific deputies who failed to accommodate him, explain why any reasonable deputy in those circumstances would have understood the high risk of harm, and identify any injuries Shaffer suffered as a result of each deputy's failure to accommodate him. *See Gordon*, 888 F.3d at 1125.

conditions, including filth and insects, which caused plaintiff to develop MRSA infection); *see also Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (affirming dismissal of claim of deliberate indifference due to plaintiff's failure to allege any harm).

Additionally, to the extent that Shaffer alleges that the conditions in AdSeg were punitive and harmful because they are dirty, overrun with cockroaches, and smell like sewage, Shaffer may be able to state a cognizable claim of deliberate indifference; however, he must identify a proper Defendant or Defendants for this claim.

These claims are **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**b. Eighth Floor**

Shaffer may also be able to state a claim of deliberate indifference as to the conditions of confinement on the eighth floor, which he described as smelling like urine, feces, and bacteria. But Shaffer must identify a proper Defendant or Defendants for his claim. This claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

As to the two incidents that took place in February 2025, including (1) Shaffer being left inside a cell without running water for four days, and (2) Shaffer being placed into a cell with feces smeared throughout the cell and told to clean it without gloves, liberally construing his allegations, Shaffer states cognizable claims of deliberate indifference against Deputies Roth, Cammarga, and Doughbar. *See e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases and establishing that a cell covered in feces and blood without a working sink or toilet was inhumane); *cf. Williams v. Allison*, No. 24-cv-1382-AGS, 2025 WL 1456934, at *1 (noting that "[a] feces-filled quarters . . . 'has potentially dangerous consequences,' including 'severe bodily harm.'") (citing *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019)).

**2. September 2024 Ear Care**

Shaffer raises several claims regarding medical care he received in September 2024 for ear pain. To the extent that he alleges that (1) Bagunas refused to take the temperature of his ear upon his request, (2) Bagunas attempted to look inside his ear without a sanitary disposable cup on the

instrument, (3) two other nurses looked inside his ear and stated that his ear looked normal and had no ear wax, and (4) the individual handing out morning pills did not wake him on one occasion, Shaffer fails to allege more than a medical disagreement or, at best, medical negligence. His claim therefore fails as a matter of law. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc) (noting that mere "'difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference."); *see also Toguchi v. Chung*, 391 F.3d 1051, 1060–61 (9th Cir. 2004) (holding that claim of negligence or medical malpractice is insufficient to constitute deliberate indifference). If he wishes to continue pursuing this claim, Shaffer must establish why these Defendants' actions were objectively unreasonable. This claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

Moreover, Shaffer may be able to state a claim related to the alleged delay or interference with his ability to receive his prescribed ear drops despite his repeated complaints about ear pain. *See Egberto v. Nevada Dep't of Corr.*, 678 Fed. App'x 500, 504–05 (9th Cir. 2017) (reversing district court's grant of summary judgment where prison doctor "ignore[d] the instructions of the prisoner's treating physician or surgeon" despite prisoner's "constant complaints of pain arising from the alleged deprivation of [that] medication.") (quotations omitted). Because Shaffer does not identify the individual or individuals responsible for delaying delivery of his medication, this claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**3. Dental Care**

Shaffer does not state a cognizable claim of deliberate indifference as to his dentist's refusal to prescribe him "strong" pain medication or an antibiotic for his cavity, but he may be able to do so. ECF No. 1 at 13. In his Complaint, Shaffer alleges only that his dentist refused to prescribe the medications Shaffer requested, and that this failure felt discriminatory because he

saw another prisoner receive strong opioids for his tooth pain.[3] Whether another prisoner was prescribed opioid medication is irrelevant because Shaffer does not plausibly show that he needed antibiotics or "strong" pain medication, that he was injured by his dentist's failure to prescribe the requested medications, nor that his dentist's course of treatment was objectively unreasonable. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (finding that although prisoner "would have preferred [narcotic pain medication] to [prescribed medication]," "no reasonable jury could conclude that the failure to prescribe narcotic pain medication . . . amounted to deliberate indifference"); *Jackson*, 90 F.3d at 332.

The claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**4. Psychological Testing**

Shaffer does not state a cognizable claim of deliberate indifference as to Dr. Bloch's failure to test him for developmental disabilities or ADHD at Shaffer's cell rather than in a confidential setting. At the outset, Shaffer does not show that he objectively faced a substantial risk of serious harm if the psychological testing was not performed. Even liberally construing Shaffer's allegations, Shaffer states only that he personally wanted the tests performed for unspecified reasons, not that he had a medical necessity for the tests. *Cf. Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting that "society does not expect that prisoners will have unqualified access to health care," and that the constitution is concerned only with a prisoner's "serious" medical needs) (citation modified).

To the extent that Shaffer alleges that Dr. Bloch deliberately failed to test him to ensure his removal from the Special Management Unit, the claim is speculative only. *See Bell*, 550 U.S. at 55. For example, Shaffer states that he "found [his housing reassignment] very odd and coincidental" based on its timing after Dr. Bloch refused to test him. ECF No. 1 at 30. Even assuming that Dr. Bloch refused to test Shaffer to ensure Shaffer's transfer to another floor, Shaffer has not alleged that he has ADHD or a developmental disability such that the failure to test

[3] The Court discusses Shaffer's various allegations of discrimination in a separate section below.

him caused any resulting injury. *See Gordon*, 888 F.3d at 1125.

This claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**5. Rashes**

Shaffer may be able to state a claim of deliberate indifference as to the treatment he received for his rashes to the extent that he alleges that several providers failed to diagnose the cause of the rashes or provide treatment other than "prescribed cremes that were not effective." ECF No. 1 at 53. As alleged, however, Shaffer does not specify the actions of each of the named providers, effectively "leaving . . . [d]efendants, [and] the district court, . . . to decipher the details" of his claim. *Gibson v. City of Portland*, 165 F. 4th 1265, 1271 (9th Cir. 2026) (noting that "shotgun pleadings" do not comply with Federal Rule of Civil Procedure 8(a)(2)). Shaffer must ensure that his allegations provide each named Defendant with notice as to how his or her actions allegedly violated Shaffer's constitutional rights; lumping Defendants together is insufficient to state a cognizable claim. *See id*.

Likewise, insofar as Shaffer alleges that a deputy and nurse delayed the collection of a sample from his rash for a total of 45 minutes, Shaffer fails to state a cognizable claim of deliberate indifference, but he may be able to do so. Shaffer must provide additional information regarding any harm he suffered because of the delay. *See Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (noting that the "mere delay of surgery, without more, [was] insufficient to state a claim of deliberate medical indifference" and the prisoner "would have no claim for deliberate medical indifference unless the [delay] was harmful.").

These claims are **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**6. Alleged False Report**

To the extent that Shaffer alleges that Centeno, Acosta, and Dr. Chen interfered with his ability to receive medical care for a potentially broken finger by making a false report that he threw feces at them, Shaffer may be able to state a claim for deliberate indifference. *See, e.g., Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("[Deliberate indifference] may appear when

prison officials deny, delay or intentionally interfere with medical treatment[.]") (citation modified). Shaffer must provide additional information regarding the length of the alleged delay, and any harm he suffered because of the delay.[4] *See Shapely*, 766 F.2d at 407.

The claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**7. Food Trays & Commissary**

Shaffer may be able to state a cognizable claim of deliberate indifference regarding the state of, and refusals to replace, his "adulterated" food trays or commissary items that were allegedly tainted with urine or other substances, which allegedly caused him to break out in rashes, nausea, diarrhea, and headaches. ECF No. 1 at 14; *see Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (holding that "the sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose"). However, Shaffer must identify the individual or individuals who were responsible for tampering with his food or commissary items, and explain why the named Defendants should have been aware of the substantial risk of harm. *See Gordon*, 888 F.3d at 1125. Shaffer is cautioned that he must ensure that his allegations permit the Court to draw a reasonable inference that the named Defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. For example, Shaffer's allegation that Deputy Johnson made a mocking comment about the food tray is insufficient to state a plausible claim for deliberate indifference against Johnson in connection to the food tray, as Shaffer's inference that the comment suggested that Johnson knew something was wrong with the tray is entirely speculative. *See Bell*, 550 U.S. at 55.

The claim is **DISMISSED** with leave to amend so Shaffer may attempt to address the

[4] As Shaffer alleges that the false report has been utilized within his competency proceedings in state court, the Court notes that a 42 U.S.C. § 1983 lawsuit is not the proper vehicle to challenge the outcomes of his competency proceedings. *See Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011) (noting that habeas corpus is the "exclusive remedy" for the prisoner who seeks "immediate or speedier release" from confinement) (citation modified); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 (9th Cir. 1995) (district court should not convert a defective section 1983 claim into a habeas petition because it may bar petitioner from bringing other habeas claims).

deficiencies identified above if he has a legitimate basis to do so.[5]

**8. Conclusory Medical Disagreements**

As detailed above, Shaffer also asserts that various doctors failed to properly treat several medical conditions between 2009 and 2025 by failing to diagnose conditions related to his ear, jaw, and head pain; failing to discuss certain CT Scan findings with Shaffer or provide Shaffer with an MRI upon his request; telling Shaffer that his CT Scan results were normal in a condescending way; or prescribing Shaffer with antipsychotics despite his belief that he does not require them and experienced various negative side-effects.

At the outset, the Court notes that most of Shaffer's allegations fail to specify which Defendants performed which actions with respect to his healthcare throughout the more than 30-year period at issue. Moreover, to the extent that Shaffer alleges that Dr. Panviska was deliberately indifferent by (1) disagreeing, after physically examining Shaffer, that he had any "lump" on his head or any abnormalities in his ear, and (2) refusing to engage in further diagnostic testing other than a blood test, Shaffer fails to state a cognizable claim of deliberate indifference because a mere "'difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *Jackson*, 90 F.3d at 332; *see, e.g.*, ECF No. 1 at 40–43 (noting that doctors' conclusions that Shaffer's CT Scan was "normal" differed from Shaffer's own interpretation of the findings). Shaffer's allegation that Dr. Peterson was deliberately indifferent due to her conclusion that Shaffer's CT Scan was normal, and based on her alleged rudeness toward Shaffer, also fail for the same reason. *See Jackson*, 90 F.3d at 332; *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th

[5] To the extent that Shaffer alleges that the commissary items he purchased were damaged or opened, his loss of these items does not itself implicate the Constitution. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding that there is no constitutional right to canteen items), *op. amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *Gray v. Celaya*, No. 17-CV-02395-WHO, 2018 WL 2971117, at *3 (N.D. Cal. Jun. 13, 2018) ("Because Gray has no entitlement to have property in prison, his due process property claim fails as a matter of law."); *accord Schrubb v. Tilton*, No. C-08-2986 TEH, 2014 WL 4129577, at *5 (N.D. Cal. Aug. 21, 2014) ("Plaintiff does not cite any state law or prison regulation that authorizes or entitles him to possess personal property in prison"). This claim is **DISMISSED** without leave to amend. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

Cir. 1998) (alleged "disrespectful and assaultive comments" insufficient to violate Constitution); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment insufficient to violate Constitution).

Shaffer's allegation that he was prescribed antipsychotics despite his belief that he does not need them is conclusory only. *See* ECF No. 1 at 46–47 (discussing provision of antipsychotics by numerous doctors, including by court order); *Bell*, 550 U.S. at 55. In addition, Shaffer's allegation that Dr. Khan should have ordered "baseline" blood tests prior to him starting the antipsychotics, at most, may state a state-law claim of medical malpractice. *See Toguchi*, 391 F.3d at 1060–61. Nevertheless, Shaffer may be able to state a cognizable claim of deliberate indifference related to Dr. Khan's alleged failure to monitor him for adverse side effects of his antipsychotic medication, which he alleges raised his cholesterol and potentially damaged his liver. But Shaffer must provide specific details regarding the length of time he was under Dr. Khan's care, whether he notified her of any side-effects he experienced, and whether Dr. Khan provided any treatment in response to those complaints so the Court may determine whether he states a cognizable claim of deliberate indifference.

These claims are **DISMISSED** with leave to amend so Shaffer may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**C. Legal Mail**

**1. Opened Mail**

Shaffer alleges that one of his legal mailings was returned to the sender by the post office, but was impermissibly opened by jail staff outside of his presence.

Jail officials may institute procedures for inspecting "legal mail," *e.g.*, mail sent between attorneys and prisoners or from prisoners to the courts. *See Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys); *Royse v. Superior Court*, 779 F.2d 573, 574–75 (9th Cir. 1986) (outgoing mail to court). But "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Correctional Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (the opening and inspecting of "legal mail" outside the presence of the

prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government). A plaintiff need not allege a longstanding practice of having his mail opened outside his presence to state a claim for relief. *Hayes*, 849 F.3d at 1218 (allegation that protected mail was opened outside plaintiff's presence on two separate occasions sufficient to state First Amendment claim).

Shaffer does not presently state a First Amendment claim for the improper opening of his legal mail. A plaintiff must show that the opening of the mail was due to more than negligence to state a constitutional violation. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989). Here, Shaffer does not provide sufficient facts regarding who the legal mail was addressed to or whether it was properly marked as legal mail when it was opened by jail staff. *See Hayes*, 849 F.3d at 1211 (noting that plaintiff must "clarify . . . whether it was properly marked as 'legal mail'" in order to state a claim). Because it is unclear whether the mail was properly marked as legal mail, and Shaffer alleges only an isolated incident of staff opening his legal mail outside his presence, Shaffer does not state a cognizable First Amendment claim. Shaffer's claim for the opening of his legal mail outside his presence is **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**2. Interference**

To the extent that Shaffer alleges that Tirado and Juarez discarded documents he was attempting to send to the state superior court, Shaffer may be able to state a cognizable First Amendment claim of interference with Shaffer's right to access the courts. Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, a prisoner must prove that there was an inadequacy in the prison's legal access program, or that jail staff took certain actions, that caused him an actual injury. *See Lewis*, 518 U.S. at 350–55. To prove an actual injury, the prisoner must show that the defendants' actions hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 354–55.

While Shaffer alleges that Tirado and Juarez allegedly threw out his mailings, Shaffer does

not provide any plausible factual allegations showing that these Defendants' actions hindered his ability to pursue non-frivolous claims related to his conviction or conditions of confinement. *Lewis*, 518 U.S. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim"). Accordingly, Shaffer's claim that Tirado and Juarez interfered with his ability to access the courts is **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**D. De Minimis Allegations**

Shaffer alleges that his constitutional rights were violated when (1) deputies sometimes allowed inmate trustees to distribute tablets, which sometimes led to Shaffer not receiving a tablet right away, having his tablet removed, or receiving a broken tablet; and (2) on one occasion, a cleaner pushed water approximately two feet into Shaffer's cell while he cleaned.

The Supreme Court has defined "punishment" in terms of intent but has cautioned that there is "a de minimis level of imposition with which the Constitution is not concerned." *See Bell*, 441 U.S. at 539 n.21 (citation modified). While these allegations sound unpleasant and frustrating, Shaffer fails to allege any facts showing that these incidents caused more than de minimis harm such that his claims implicate his Fourteenth Amendment due process rights. *See Poslof v. Arce*, No. 24-CV-06004-PCP, 2025 WL 786356, at *12 (N.D. Cal. Mar. 12, 2025) ("noting that prisoners "ha[ve] no constitutional right use a prison-issued tablet"); *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir.1995) (temporary placement in cell that was dirty and smelled bad did not violate pretrial detainees' constitutional rights because harm was de minimis).

Shaffer's claims related to the distribution of tablets and the cleaner who pushed water into his cell are **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**E. Equal Protection**

Throughout the Complaint, Shaffer alleges that he believes he was discriminated against because he is Caucasian and certain named Defendants who allegedly violated his rights are not.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race must plead intentional unlawful racial discrimination or allege facts that are at least susceptible of an inference of racially discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). Conclusory allegations will not suffice. *Ventura Mobilehome Comms. Owners Ass'n v. City of Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004) (affirming dismissal of equal protection claim because "[a]side from conclusory allegations, Appellant has not . . . alleged how [similarly situated individuals] are treated differently").

Shaffer has not stated plausible racial discrimination claims against any Defendant. Liberally construed, Shaffer alleges only that he was mistreated by Defendants who are not Caucasian; he alleges no facts plausibly showing that he suffered disparate treatment in comparison to similarly situated prisoners of another race. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (holding equal protection claim alleging harmful treatment but not disparate treatment was properly dismissed). Moreover, as Shaffer acknowledges throughout the Complaint, the named Defendants' race does not alone support an inference that they acted with discriminatory intent, as opposed to some non-race-based reason. Shaffer's discrimination claims are **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

### F. Supervisory Liability

In his lists of Defendants, Shaffer names Captain Gill, the Commander at the Santa Clara County Main Jail. *See* ECF No. 1 at 2. There is no *respondeat superior* liability under § 1983, *i.e.*, no liability under the theory that one is liable simply because he supervises a person who has violated a plaintiff's rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To state a claim for relief under § 1983 against a supervisor defendant, a plaintiff must allege facts that would support a claim that (1) the supervisor proximately caused the constitutional violation at

issue; (2) the supervisor failed to properly train or supervise personnel resulting in the alleged deprivation; (3) the alleged deprivation resulted from custom or policy for which the supervisor was responsible; or (4) the supervisor knew of the alleged misconduct and failed to act to prevent future misconduct. *See Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are insufficient to state a claim. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Starr v. Baca*, 652 F.2d 1202, 1208 (9th Cir. 2011).

Here, Shaffer does not allege that Captain Gill was specifically aware of any of the incidents, nor does Shaffer identify any specific deficiencies in training that led to his alleged constitutional violations or show that Gill proximately caused the constitutional violations at issue. *See Twombly*, 550 U.S. at 555. Shaffer's claim against Gill is **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

**G. Municipal Liability**

To the extent that Shaffer names the Santa Clara County Sheriff's Office as a Defendant, the Court notes that government entities are not typically subject to liability under 42 U.S.C. § 1983, but they may be held liable where the entity's official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish municipal liability under § 1983 for a violation of constitutional rights, it is insufficient to allege simply that a policy, custom, or practice exists. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). Under the more stringent pleading requirements set forth in *Twombly* and *Iqbal*, a plaintiff must allege sufficient facts regarding the specific nature of the alleged policy, custom, or practice to allow a municipal entity to effectively defend itself. *AE ex rel. Hernandez*, 666 F.3d at 636–37; *Iqbal*, 556 U.S. at 670.

Shaffer does not allege any official policies, customs, or practices responsible leading to the alleged constitutional violations. Shaffer's claim against the Santa Clara County Sheriff's

United States District Court
Northern District of California

Office is therefore **DISMISSED** with leave to amend so he may attempt to address the deficiencies identified above if he has a legitimate basis to do so.

## IV. LEAVE TO AMEND

Shaffer shall be granted one opportunity to file an amended complaint that corrects the deficiencies of the various claims discussed above. As evident, the Complaint lists so many Defendants, factual allegations, and possible causes of action that it fails to put each Defendant on notice about the nature of Shaffer's claims and requested relief in violation of Federal Rule of Civil Procedure Rule 8. If Shaffer wants to file an amended complaint, his amended complaint should be no longer than 25 pages and must explain each claim in clear and concise language identifying each Defendant's alleged actions.

Moreover, Shaffer must ensure that any amended complaint complies with Federal Rules of Civil Procedure 18(a) and 20(a) as to the joinder of claims and parties. The Court has previously cautioned Shaffer that complaints that do not comply with these rules may be subject to dismissal. *See, e.g., Shaffer v. Sotelo*, No. 25-cv-01069-NW, ECF No. 16 at 10–11; *Shaffer v. City of San Jose*, No. 25-cv-01308-NW, ECF No. 17 at 7–8. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." *Id.* (citing 28 U.S.C. § 1915(g)). Parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added).

Here, it is clear that many of Shaffer's claims are not related to each other or do not arise

out of the same transaction, occurrence, or series of transactions or occurrences, as the Complaint includes allegations spanning multiple bouts of incarceration and more than 30 years. Fed. R. Civ. P. 20(a)(2). "A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George*, 507 F.3d at 607 (noting that, in prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims, prisoner made no effort to show that 24 defendants he named had participated in the same transaction or series of transactions or that a question of fact is common to all defendants). Accordingly, Shaffer is cautioned that if he files a "buckshot [amended] complaint," it will be subject to dismissal without prejudice. *Id.*

## V. CONCLUSION

The Court orders as follows:

1. Shaffer's motion to amend his Complaint (ECF No. 5) is **DENIED** as moot given the Court's dismissal of the Complaint with leave to amend.
2. Shaffer states cognizable claims of failure to protect against Deputies Palayo and Downing and deliberate indifference against Deputies Roth, Cammarga, and Doughbar in connection to the February 2025 incidents that occurred on the eighth floor of the jail.
3. Shaffer's claim regarding the loss of his commissary items due to them being opened is **DISMISSED WITHOUT LEAVE TO AMEND**.
4. Given the joinder issues noted above, the Complaint is otherwise **DISMISSED WITH LEAVE TO AMEND** so Shaffer may address the deficiencies or voluntarily dismiss any unrelated or non-cognizable claims.
5. Shaffer has been granted limited leave to amend his Complaint. The amended complaint must be filed within **twenty-eight (28) days** of the date this order is filed and must include the caption and civil case number used in this order and the words "Amended Complaint" on the first page. Because an amended complaint completely replaces the original, Shaffer must include all claims and allegations of

fact supporting them. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Shaffer is cautioned that he may not incorporate material from the prior complaint by reference. He must reallege all claims he wants to pursue within the body of his complaint, including the cognizable claims addressed above. As noted above, the amended complaint should be no longer than 25 pages. Failure to amend within the designated time or, alternatively, failure to voluntarily dismiss unrelated claims and Defendants, will result in this action's dismissal without prejudice.

6. It is Shaffer's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

7. The Clerk is requested to send a blank prisoner civil rights form to Shaffer with his copy of this order.

**IT IS SO ORDERED.**

Dated: August 31, 2026

Noël Wise
United States District Judge